**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUNNY POWER TRADING HONG KONG LIMITED, | |
| Plaintiff, | Case No.: 26-cv-672 |
| vs. | |
| 180s USA, LLC, and 180s IP Holdings, LLC, | Judge Edgardo Ramos |
| Defendants. | Magistrate Judge Barbara C. Moses |

**MEMORANDUM OF LAW IN SUPPORT OF**

**PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER**

# Table of Contents

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 2

III. THE REGISTRATION IS SUBJECT TO INVALIDITY DEFENSES THAT SURVIVE

INCONTESTABILITY ............................................................................................. 3

IV. ARGUMENT ..................................................................................................... 3

   A. Applicable Standard ..................................................................................... 3

   B. Plaintiff Has a Likelihood of Success on the Merits ..................................... 4

      1. Functionality ........................................................................................... 4

      2. Fraud in Procurement ............................................................................. 5

      3. Genericness ............................................................................................. 6

      4. Substantial Laches .................................................................................. 6

   C. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief .................. 7

      1. Destruction of Inventory Is Irreversible ................................................. 7

      2. Loss of Customers, Market Share, and Business Opportunities .............. 8

      3. Damage to Reputation and Goodwill ....................................................... 9

      4. Immediate Injunctive Relief Is Necessary .............................................. 9

   D. The Balance of Harms Favors Plaintiff ...................................................... 10

   E. The Public Interest Favors Granting the TRO ............................................. 10

   F. Ex Parte Relief Is Warranted Under Rule 65(b) .......................................... 12

VI. CONCLUSION ................................................................................................. 14

## I.  INTRODUCTION

On February 2, 2026, Amazon will begin destroying nearly 30,000 units of Plaintiff's inventory—not because Plaintiff sold counterfeit goods, but because Defendants filed trademark complaints based on a registration that should never have issued. Defendants claim trademark protection for a functional product design that their own utility patents disclose, and they obtained that registration by concealing those patents from the USPTO. Plaintiff respectfully requests emergency relief to preserve its inventory  and to restore Plaintiff's product listings that were deactivated as a result of Defendants' baseless complaints while the validity of Defendants' trademark is adjudicated.

Plaintiff SUNNY POWER TRADING HONG KONG LIMITED (d/b/a METOG®Apparel) sells genuine, METOG-branded ear warmers through Amazon. On November 3, 2025, Defendant 180s USA, LLC filed trademark infringement complaints with Amazon, triggering the removal of Plaintiff's product listings and the scheduled destruction of 29,957 units of inventory valued at approximately $44,935.5 USD. Amazon will destroy 573 units on February 2, 2026, and 29,384 units on February 8, 2026. Decl. ¶ ¶ 5-7.

Once destroyed, this inventory cannot be restored. No damages award can undo the permanent loss of Plaintiff's business assets. Nor can damages undo the ongoing economic and reputational harm from the removal of Plaintiff's product listings, which continues to compound daily during peak selling season. Courts have granted similar relief to prevent precisely this harm. See *Zhongshan Qushi Elec. Commerce Co. v. Steven*, No. 1:24-cv-12803 (N.D. Ill. Jan. 15, 2025) (granting TRO to prevent destruction of $785,000 in Amazon FBA inventory and to reinstate

Plaintiff's product listings) (since this is an unpublished decision, a copy of the order has been attached as Exhibit A after this Memorandum for easier reference).

Plaintiff seeks narrow relief: preservation of inventory and reinstate the listings pending resolution of this action. This modest request preserves the status quo while Plaintiff's invalidity defenses—functionality, fraud, and genericness—and whether Defendants' substantial laches should bar their enforcement are adjudicated on the merits.

## II.  STATEMENT OF FACTS

Plaintiff is a Hong Kong limited company that sells winter apparel and accessories, including ear warmers and earmuffs, through Amazon.com under the METOG brand. Decl. ¶¶ 1-2. A significant portion of Plaintiff's revenue is derived from sales on Amazon's marketplace, which serves as a critical platform for Plaintiff's operations in the United States and internationally. Decl. ¶ 3. Plaintiff has invested substantial resources in product development, manufacturing, and marketing to establish its presence on Amazon and build a reputation for quality and reliability. *Id.*

On or about November 3, 2025, Defendant 180s USA, LLC filed multiple trademark infringement complaints with Amazon alleging that Plaintiff's ear warmer products infringe U.S. Trademark Registration No. 3,089,225. Decl. ¶ 4; Complaint ¶¶ 51-52. The Registration covers a behind-the-head ear warmer configuration—a functional product design that Plaintiff contends cannot be protected as a trademark.

As a result of Defendants' complaints, Amazon removed Plaintiff's product listings for 25 ASINs and initiated "authenticity reviews" of Plaintiff's FBA inventory. Decl. ¶¶ 5-6. Amazon has notified Plaintiff that its inventory will be destroyed according to the following schedule: **February 2, 2026:** 573 units across 7 ASINs (B0BJJQ2PQ5, B0BJJRNR35, B0DCBBKK73, B0DCBDGNDQ, B0DCBDP6CZ, B0DCBDS3DX, B0DCBMXS98); and **February 8, 2026:**

29,384 units across 12 ASINs (B018CD5IJO, B018CD5JES, B018CD5JUM, B01B4GI1TU, B01M000DHS, B01MAXQFKA, B01MTL482V, B08HMVTJQS, B0DC5ZC5FD, B0DC61BMWZ, B0DC61SSRZ, B0DC62422G).Decl. ¶ 7. In total, Amazon has threatened to destroy approximately 29,957 units of Plaintiff's inventory, for approximately $44,935.5 USD—a substantial portion of Plaintiff's business assets. Decl. ¶ 8.

Critically, Plaintiff's products are genuine METOG-branded products manufactured for and by Plaintiff—not counterfeit 180s products. Decl. ¶ 9. The trademark dispute concerns whether the behind-the-head ear warmer design configuration can be protected as a trademark, not whether Plaintiff is selling counterfeit goods bearing the 180s brand.

## III.  THE REGISTRATION IS SUBJECT TO INVALIDITY DEFENSES THAT SURVIVE INCONTESTABILITY

The Registration has achieved incontestable status under 15 U.S.C. § 1065, but incontestability does not bar the defenses asserted here. Each of Plaintiff's three invalidity grounds—functionality, fraud in procurement, and genericness— which are express statutory exceptions to incontestability. See 15 U.S.C. § 1115(b)(8) (functionality); 15 U.S.C. § 1115(b)(1) (fraud); 15 U.S.C. § 1064(3) (genericness); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985) ("With respect to incontestable marks, however, § 33(b) provides that registration is conclusive evidence of the registrant's exclusive right to use the mark, subject to the conditions of § 15 and the seven defenses enumerated in § 33(b) itself ").

## IV.  ARGUMENT

### A.  Applicable Standard

A party seeking a temporary restraining order must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the

balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

In the Second Circuit, a party may obtain a TRO by showing "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation," provided the balance of hardships tips "decidedly" in the movant's favor. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

**B. Plaintiff Has a Likelihood of Success on the Merits**

Plaintiff has a substantial likelihood of success on the merits of its invalidity claims. At minimum, Plaintiff raises "sufficiently serious questions going to the merits" that, combined with the decidedly favorable balance of hardships, warrant preliminary relief.

**1. Functionality**

The behind-the-head ear warmer configuration is functional and cannot be protected as a trademark. Under *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001), "[a] utility patent is strong evidence that the features therein claimed are functional." The Second Circuit applies this principle rigorously. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 120 n.4 (2d Cir. 2001) (noting the Supreme Court's "recent rulings which curtail trade dress protection by expanding the functionality doctrine").

Defendants own multiple utility patents claiming the exact behind-the-head ear warmer configuration, including U.S. Patent No. 6,920,645 B2, which issued on July 26, 2005—during the trademark prosecution—and claims "[a]n ear warmer compris[ing] a set of membranes and a frame . . . disposed within the interior of the set of membranes." Complaint ¶¶ 23-24, 39-40. This is the exact configuration claimed as a trademark.

In *TrafFix*, the Supreme Court held that "where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional." 532 U.S. at 30. Here, Defendants' own patents claimed the very features they now seek to protect as trade dress—a fact that is "strong evidence" of functionality. Id. at 29.

The USPTO Examining Attorney recognized this functionality during prosecution, finding that "the curved design, shape and flexible nature are functional for the goods." Complaint ¶¶ 20-21. The Registration should never have issued.

### 2.  Fraud in Procurement

The Registration was procured through fraud on the USPTO. During prosecution, the Examining Attorney specifically requested that 180s, Inc. disclose "whether the proposed mark is or has been the subject of either a design or utility patent." Complaint ¶ 22. At that time, 180s, Inc. was the assignee of at least eight issued utility patents related to ear warmers—including Patent No. 6,920,645, which had issued just three months earlier. Complaint ¶¶ 23-24.

Instead of disclosing these patents, 180s, Inc. falsely represented that it was "in the process of gathering the information requested." Complaint ¶ 25. No "gathering" was necessary for patents that 180s, Inc. had owned for years. Upon information and belief, 180s, Inc. never provided the requested patent information, and the Registration issued without the USPTO learning of the multiple utility patents covering the claimed configuration. Complaint ¶¶ 27-28.

This fraud was previously alleged by major national retailers in TTAB cancellation proceedings. In 2011, H&M Hennes & Mauritz L.P. filed a Petition for Cancellation (Cancellation No. 92053585) alleging fraud. Complaint ¶ 31. Shortly thereafter, Brookstone Company, Inc. filed its own cancellation petition (Cancellation No. 92053989), specifically alleging that 180s, Inc.

"intentionally and deliberately withheld material information during the examination of its application" and "procured the Registration through bad faith, by false and fraudulent representations." Complaint ¶¶ 32-34. Both proceedings were terminated by settlement—not by any ruling on the merits. Complaint ¶ 35.

### 3. Genericness

Following the expiration of 180s' utility patents, the behind-the-head ear warmer configuration has become generic. Numerous competitors now sell ear warmers with identical configurations, including Cole Haan, Joseph Abboud, UGG, REDESS, Gelante, HIG, and many others. Complaint ¶¶ 45-48. These products are sold by major national retailers and e-commerce platforms, demonstrating that the behind-the-head configuration is the standard, generic form for this product category.

Consumers encountering behind-the-head ear warmers from Cole Haan, UGG, Joseph Abboud, and numerous other brands do not associate the configuration with any single source. The shape signifies "ear warmer," not "180s." Complaint ¶ 48.

### 4. Substantial Laches

On or about October 12, 2019, Defendants attempted to enforce its trademark by filing a complaint to Amazon. Through Plaintiff's appeal, Amazon has reinstated Plaintiff's ASINs. Now about 6 years later, Defendants assert its trademark right. Such substantial delay bar Defendants remedy under the trademark laws.

This Court has noted Defendant's proof in its laches defense must show that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert

its rights at this time." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040. Citing *Cuban Cigar Brands, N.V. v. Upmann International, Inc.*, 457 F. Supp. 1090, 1096 (S.D.N.Y.1978).

Here, it is undisputed, that Defendants knew Plaintiff's use. The 6 years delay cannot be justified. Plaintiff, upon reinstatement of its product listings, continued marketing, branding, and business expansion related to the accused products over the intervening six years, without Defendants' action. Allowing Defendants assert their rights now, if any, after years of silence while Plaintiff built its business, would be manifestly inequitable.

## C. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief

The destruction of Plaintiff's inventory and the continued suspension of Plaintiff's product listings constitutes the epitome of irreparable harm. The Second Circuit has emphasized that courts should "actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010). Here, no damages award can restore destroyed inventory, and no damages award can undo the loss of Amazon search ranking, customer relationships, and market position that results from prolonged listing suspension.

### 1. Destruction of Inventory Is Irreversible

Plaintiff's inventory—approximately 29,957 units valued at approximately $44,935.5 is scheduled for destruction by Amazon on February 2, 2026 and February 8, 2026. Decl. ¶¶ 7-8. Once destroyed, this inventory cannot be restored. No subsequent damages award can bring back the physical products or Plaintiff's ability to fulfill customer orders.

Unlike cases where monetary damages might compensate for lost profits, the destruction of physical goods is irreversible. This distinguishes the present case from ordinary commercial

disputes. See *Randisi v. Mira Gardens, Inc.*, 272 A.D.2d 387 (2d Dept. 2000) (threat of destruction of property constitutes irreparable harm). Courts have recognized that such destruction, once accomplished, cannot be remedied. See also *Zhongshan Qushi Elec. Commerce Co. v. Steven*, No. 1:24-cv-12803 (N.D. Ill. Jan. 15, 2025) (granting TRO to prevent Amazon's destruction of inventory valued at $785,000, finding "immediate and irreparable harm").

### 2. Loss of Customers, Market Share, and Business Opportunities

Amazon serves as Plaintiff's primary sales channel, accounting for a significant percentage of its revenue. Decl. ¶ 3. The freeze and potential destruction of Plaintiff's inventory have already disrupted its ability to meet customer demand. This has led to canceled orders, loss of repeat customers, and a tarnished reputation for reliability.

The continued suspension of Plaintiff's ASINs compounds this harm daily. Each day the listings remain deactivated, Plaintiff loses sales that cannot be recaptured, its Amazon search ranking and algorithmic placement deteriorate, and customers turn to competitors. These losses are inherently difficult to quantify—Plaintiff cannot calculate with precision how many customers it has lost or how long it will take to rebuild its Amazon presence once reinstated. This uncertainty is precisely why courts find such harm irreparable.

If inventory is destroyed and listings remain suspended, customers who depend on Plaintiff's products will seek alternative suppliers, many of whom are Plaintiff's direct competitors, leading to a permanent loss of market share. Courts have recognized that loss of market share and the ability to compete are quintessential forms of irreparable harm. See *Black & Decker Corp. v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 86990, at *11 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm.").

### 3.  Damage to Reputation and Goodwill

Courts have repeatedly held that damage to reputation and goodwill constitutes irreparable harm. See *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 29 (2d Cir.1978) (irreparable injury shown when "plaintiff is deprived totally of the opportunity to sell an entire line of merchandise and may incur injury to its goodwill and reputation 'as a dependable distributor' "); *Reuters Ltd. v. United Press Int'l*, 903 F.2d 904 (2d Cir.1990) (irreparable harm because, if Reuters were allowed to terminate the parties' agreement, United Press would be unable to continue supplying its product (provided to it by Reuters) to its customers).

Here, Defendants' trademark complaints have caused Amazon to suspend Plaintiff's listings and initiate authenticity reviews—actions that convey a false impression of wrongdoing to customers, distributors, and business partners. The sudden disappearance of Plaintiff's listings signals to customers that Plaintiff is an unreliable or illegitimate seller. Amazon's suspension, coupled with the risk of inventory destruction, severely damages Plaintiff's hard-earned reputation for reliability and quality. Only reinstatement of Plaintiff's listings can halt this ongoing reputational harm.

### 4.  Immediate Injunctive Relief Is Necessary

Plaintiff has raised credible defenses to the alleged infringement, including functionality, fraud, and genericness—all grounds that survive incontestability and Defendants' substantial laches bar trademark enforcement. However, Amazon's policy dictates that Plaintiff's inventory will be destroyed on February 2, 2026 and February 8, 2026 regardless of the validity of the underlying trademark dispute, underscoring the urgency of judicial intervention to prevent irreparable harm. Both forms of relief—inventory preservation and listing reinstatement—are necessary to maintain the status quo pending adjudication of the merits.

### D.  The Balance of Harms Favors Plaintiff

The balance of hardships weighs heavily—indeed, "decidedly"—in Plaintiff's favor. *See Citigroup*, 598 F.3d at 35. If the TRO is not granted, Plaintiff will lose approximately 29,957 units of inventory valued at approximately $44,935.5 a total, irreversible loss. Decl. ¶ 8. Meanwhile, Plaintiff's listings will remain suspended, causing ongoing and compounding harm to Plaintiff's sales, search ranking, and customer relationships.

Defendants, by contrast, will suffer *no harm* from the requested relief while this matter is adjudicated. As to inventory preservation, Defendants' trademark rights, to the extent valid, are not impaired by merely preserving Plaintiff's inventory pending resolution of this dispute. The product listings remain suspended; Plaintiff cannot sell the products. Defendants suffer no competitive injury from inventory sitting in an Amazon warehouse. As to listing reinstatement, Plaintiff seeks only restoration of the status quo ante—the condition that existed before Defendants filed their complaints. Plaintiff's listings were active and lawful before Defendants initiated this dispute based on a trademark that Plaintiff contends is invalid. Reinstatement does not prejudge the merits; it merely allows Plaintiff to continue operating its business while the validity of Defendants' trademark is adjudicated. Defendants cannot claim legitimate harm from the reinstatement of listings for products they have no valid right to exclude from the market.

As the Second Circuit has pointed out, "[P]reserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action." *Mastrio v. Sebelius*, 768 F.3d 116, 120-21 (2d Cir. 2014). The relief requested—preservation of inventory and reinstatement of listings—maintains the status quo and allows the merits of this dispute to be adjudicated without irreparable harm to either party.

### E.  The Public Interest Favors Granting the TRO

The public interest strongly favors granting the requested relief.

First, the public has an interest in ensuring that trademark rights are not used to stifle legitimate competition. Defendants have misused Amazon's trademark infringement notice program to impose significant harm on Plaintiff without subjecting their claims to proper judicial review. This conduct undermines public confidence in the integrity of intellectual property enforcement by allowing private parties to exploit procedural loopholes to harm competitors unfairly.

Second, the public has an interest in judicial resolution of intellectual property disputes. Allowing inventory to be destroyed before the merits can be adjudicated deprives Plaintiff of meaningful judicial review. Granting the TRO ensures that this dispute is resolved based on evidence and law, not unilateral enforcement actions outside of judicial oversight.

Third, the public has an interest in preventing abuse of e-commerce enforcement mechanisms. Amazon's marketplace serves as a critical platform for small and medium-sized businesses. Defendants' actions threaten to force Plaintiff out of the market through enforcement of a potentially invalid trademark. Allowing trademark owners to weaponize Amazon's policies to destroy competitors' inventory—before any judicial determination of infringement or validity— would encourage abuse and harm legitimate businesses that rely on e-commerce platforms.

Forth, the public has an interest in the free flow of legitimate commerce on e-commerce platforms. Plaintiff's products have been sold on Amazon for years without any judicial determination of infringement. Allowing Defendants to maintain the suspension of Plaintiff's listings based solely on their unilateral complaints—while the validity of their trademark remains in serious doubt—harms not only Plaintiff but also the consumers who rely on access to Plaintiff's

products. Reinstatement of Plaintiff's listings serves the public interest by restoring consumer choice pending resolution of this dispute.

Fifth, by granting relief, this Court reinforces the importance of judicial oversight in resolving intellectual property disputes. This promotes public confidence in the legal system and ensures that such disputes are adjudicated based on evidence, not unilateral actions by private parties operating outside of judicial review.

### F.  Ex Parte Relief Is Warranted Under Rule 65(b)

Rule 65(b)(1) provides that a temporary restraining order may be granted without notice to the adverse party if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The applicant must also certify "the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." Fed. R. Civ. P. 65(b)(1)(B).

The Second Circuit has recognized that ex parte temporary restraining orders are appropriate when they are "the sole method of preserving a state of affairs in which the court can provide effective final relief." *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (quoting *Developments in the Law—Injunctions*, 78 Harv. L. Rev. 994, 1060 (1965)). As the Second Circuit explained, "[i]mmediate action is vital when imminent destruction of the disputed property . . . is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all." *Id.*

Here, Amazon will destroy 573 units of Plaintiff's inventory on **February 2, 2026—just days from the date of this filing**. Even with immediate notice to Defendants, the time required for Defendants to receive notice, prepare and file an opposition, and for the Court to schedule and

hold a hearing may well exceed this deadline. If the inventory is destroyed before the Court can rule, no effective relief will be possible. This is precisely the circumstance contemplated by Rule 65(b) and *Vuitton*.

Critically, the requested relief imposes minimal burden on Defendants. Plaintiff seeks preservation of its inventory and reinstatement of its product listings—relief that merely restores the status quo ante that existed before Defendants filed their improper complaints. The inventory will remain in Amazon's warehouse pending resolution. And reinstatement of listings simply allows Plaintiff to continue operating its business while the validity of Defendants' trademark is adjudicated—the same position Plaintiff occupied for years before Defendants' 2019 complaint, and again after Amazon rejected that complaint.

Defendants cannot claim prejudice from reinstatement of listings for products they have no valid right to exclude. If their trademark is invalid—as Plaintiff contends—Defendants have no cognizable interest in keeping Plaintiff's listings suspended. And if Defendants ultimately prevail on the merits, they will have a full remedy: permanent injunctive relief and damages.

In short, granting the requested TRO restores the status quo: the inventory is preserved and Plaintiff's listings are reinstated. If Defendants ultimately prevail on the merits, they may then seek destruction of the inventory and suspension of listings. But if Plaintiff prevails, Plaintiff will not have suffered the irreversible loss of its inventory, its market position, and its customer relationships during the pendency of this litigation. This is classic status quo preservation—the very purpose for which Rule 65(b) exists.

As the Supreme Court has explained, "[t]he stringent restrictions imposed . . . on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be

heard has been granted both sides of a dispute." *Granny Goose Foods, Inc.   Brotherhood of Teamsters*, 415 U.S. 423, 438-39 (1974). But the Supreme Court also recognized that "[e]x parte temporary restraining orders are no doubt necessary in certain circumstances" and "should be restricted to serving their underlying purpose of *preserving the status quo and preventing irreparable harm* just so long as is necessary to hold a hearing." *Id.* That is precisely what Plaintiff seeks here.

## VI. CONCLUSION

The imminent and irreparable harm from Amazon's scheduled destruction of Plaintiff's inventory and the ongoing harm from the suspension of Plaintiff's product listings far outweigh any potential harm to Defendants. Plaintiff has demonstrated serious questions going to the merits of its invalidity claims—functionality, fraud, and genericness—all of which survive incontestability and and whether Defendants' substantial laches should  bar their trademark enforcement actions. The balance of hardships tips decidedly in Plaintiff's favor, and the public interest supports judicial resolution of this dispute.

Plaintiff respectfully requests that this Court issue a Temporary Restraining Order:

1. Requiring Defendants to provide written notice to Amazon.com to preserve Plaintiff's inventory currently under authenticity review and to refrain from destroying said inventory;

2. Preventing Amazon from destroying Plaintiff's inventory, consisting of approximately 29,957 units across multiple ASINs, pending resolution of this action;

3. Requiring Defendants to withdraw or suspend the intellectual property complaints filed with Amazon that resulted in the deactivation of Plaintiff's listings;

4. Requiring Amazon to reinstate Plaintiff's listings and selling privileges for the affected ASINs; and

5. Such other and further relief as this Court deems just and proper.

Dated: January 28, 2026                    Respectfully submitted,


                                           /s/ Shan Zhu
                                           Shan Zhu
                                           3808 Union Street Suite 9A-107
                                           Flushing, New York 11354
                                           Phone: 917-636-7914
                                           Email: szhu@szhulaw.com


                                           *Attorneys for Plaintiff*